May it please the court, my name is Kevin Kelbel and with William R. Hobson and the City Tech Council table we represent Rhonda Smith, the appellant. I'm going to try and reserve two minutes of my time as well. Rhonda Smith is legally blind. She was a first year kindergarten teacher at Noah Webster Basic School and she was not offered a second year contract for the reason that she did not fit in. I don't think there's any question if she had been told you don't fit in because you're blind that that would be a violation of the ADA. So at summary judgment I think the only issue is could a reasonable juror have inferred from the evidence in the record that what they meant by you don't fit in is you don't fit in because you're blind. There are three pieces of evidence that support that inference. First there's the testimony of the school's director Kelly Wade. She testified that she didn't believe a blind person could be an effective teacher. Then there's a second portion. Well that's not exactly what she said. She said that with the proper accommodation they might be able to do it but she didn't know what accommodation would be afforded to a blind teacher. That is not necessarily either what she said. It was my understanding from reading the record that she did say that she couldn't be an effective teacher without accommodation and she did say that she didn't understand a term that was specifically asked of her but she did suggest all the things that she thought ought to happen in order to help this particular teacher. Well what she said was if you have accommodations then I don't know what those would be if you are blind. I don't and I think that's and I think at summary judgment a fair inference from that comment is I don't know what accommodations we can make for a blind person. But there's more than just that statement. There's the discussion she had with Mr. Hobson at her deposition about the Noah Webster document that was entitled Concerns about Rhonda Smith. And the concern is her ability to see impairs her ability to perform her job accurately. Did I read that right was the question she says yes. And then that document goes on and lists all of the concerns. They included copier usage cannot see clearly to push buttons. She has to put her face about an inch away from the display screen to see. Teacher observed her and had to assist her. Cannot drive so she walks to school as other employees pick her up and take her home. Does not see the principal or vice principal when they come into the classroom. Not being able to see her students perform on stage. She does not notice when the individual students are hurt or misbehaving and that's because she couldn't see them. She calls students by the wrong name because she cannot distinguish between them. The phonics charts are often set incorrectly because she does not see them. Too hard for her to see the misbehavior so she just tells them to be quiet. This memo that Noah Webster produced in Discovery ties the classroom performance to her visual disability. That would that would indicate that they were I mean all of those things you're not challenging that all of those things are not true. That that that could be the before you can make any accommodation you have to understand what the problems are. So I don't. Well doesn't doesn't all this. I mean I guess what my colleague is trying to suggest it doesn't this all come from her actual observation and evaluation. No I don't believe so. The first the there's a list of observations that were made about Rhonda Smith in the October evaluation and then after that was that October 9th classroom accommodation list that she gave to the school and they provided her those things and the areas that they deemed needed improvement in October she actually improved all but one of them by the March the March the March review. But they never came back to her after October and said at any time it's a you're in danger of losing your job that these are the other areas we've since identified that need an accommodation. There was no discussion of accommodation after. Let me ask you another question that I don't quite understand. She was not terminated. She she was she. I thought that her contract was not renewed. She was not offered a new contract for the second year. And in the teaching profession that's if you're performing well there isn't. I mean she's not entitled to it. But so if you want to look at that within you're really looking at. She was not weak. She was not offered and she was not offered a contract in the first instance for the second year. And then that would tie into the qualification standards in the application that was visual acuity and peripheral vision and the ability to change. Well they hired her. They evaluated her. They kept her for the full year. They did not renew her contract. As I understand it they did not renew other teachers who were not disabled as well. Correct. But they didn't tell the non-disabled teachers that they did not fit in. And they you're allowed if there's no there's no burden on the school to provide accommodations to non-disabled teachers. So if the non-disabled teachers are not meeting the performance standard they can just let them go. If a disabled teacher is not meeting the performance standard you have to engage in the interactive process and that never happened. And with respect to the qualification standards being applied to Rhonda when she was originally hired I don't think they understood and it's pretty clear from Rhonda's testimony just how bad her visual impairment was. Bill Taylor who actually did the interview said I didn't consider her disabled during the interview. I knew she had a visual impairment. And I think what happened is in the course of the year they figured out just how bad her limitations were. And when it came time to offer her a new contract they decided the burdens of having a blind teacher were too much and they when they said you don't fit in it was you don't fit in because you're blind. Well what about the fact that they cited all of these reasons. All those reasons. They had nothing to do and they seemed to match up with what they had observed. All those reasons that were things that were first presented in the litigation. They didn't tell any of that to Rhonda while she was working there. That wasn't the reason they gave her when they terminated when they offered her a new contract. And if these reasons exist if they had knowledge of these during the school year then the ADA interactive process requires them to go to Rhonda during the school year and say here's the problems we think you're having. You can't see kids raising their hands. You can't read the phonics charts. You can't properly administer discipline because you can't see who's misbehaving. Those are things that they should have come to her with during the school year and seen if there was an accommodation. And if they had done that then at the end of the year if she's still not performing they can let her go. And your bottom line is what? What do you want from us? We would like summary judgment reversed and let her have her case tried to a jury. I think  What do I do with Brown v. Lucky Stores which suggests that an employer only initiates the process of interactive process when requested by the employee? In order for the employee to request the interactive process she has to know that they consider her performance deficient. The October 9th, the October evaluation from where all those She was told she was doing a good job in giving suggestions to improve those few areas. She had no idea she was underperforming. If I had a 95% rating in law school I might have gotten a job at this firm over here. I mean that's a remarkable score for a first year kindergarten teacher. Your firm doesn't like 95%ers? I think where I was standing in the class would not have gotten me in the door, Your Honor. What are the other issues that you think the judge overlooked? Factual issues? Factual issues? One of the key things is when they say they terminated her for didn't offer a new contract because of her performance is they gave her the maximum performance bonus. And that's evidence that contradicts their later adopted non-discriminatory reason. And the judge says well that doesn't undercut their substantial evidence. Well it's summary judgment. If we have evidence she's not supposed to weigh that. Well as I understand it the judge found there was no direct evidence of discrimination and therefore we had to apply the burden shifting analysis. Correct. And the judge suggests that in order to do that one should show that one was qualified able to perform with reasonable accommodation. And as I understood what the judge said she was given one-on-one training where others were not and on computer skills for instance. And that was because they were trying to help her with accommodation that she didn't that nobody told the administration about a teacher about the teacher who was saying she couldn't do her work or whatever. And so therefore they couldn't deal with that. Now I guess what I'm trying to deal with is what do I say is the substantial evidence that establishes the prima facie case of discrimination. First with respect to whether she was capable of doing her job that's not the exact standard the judge applied. She said there was evidence she was not performing her job and that was the argument that Noah Webster advanced. That's the wrong standard. Is she capable of doing her job. Ninety five percent on the first evaluation. So she's capable of doing her job. There's no dispute that she's disabled and there's the proper reason for termination that she was underperforming is contradicted by the fact she had a 95 percent rating and got a maximum performance bonus. I have six seconds left. We'll give you. Could you excuse me. Could you bring the microphone down a little bit. Speak into it. Thank you. That's good. No that's a little bit much too far. That's better. I think Madam Clerk you need to turn on her mic somehow because we cannot hear it. I mean you can you can hear her but you can't hear the mic. Can you speak to the mic again. No we don't hear only you. So you'll have to speak up. Well just speak up. This is working. We're really going loud now. But you're still not. Mic up. All right. I'd like to focus on two areas. The first is the interactive process. Conspicuously absent from either the brief or the oral argument is any case or other legal authority that no law should be obligated to engage in the interactive process in March of 2017. In February, absent the employer being on notice that the performing story's reasons are caused by a disability. The employer should not approach that with the employee. In fact the EEOC guidance on this point is clear. The EEOC guidance says that if an employer mentions an employee's disability during a discussion about a performance or conduct problem, if the employee does not do so, the employee is inappropriate for the employer to focus a discussion on performance or conduct with disability. Rather, if an employee was familiar with the condition, was obligated to notify the employer that accommodation is required, there is no dispute in this case that Ms. Smith ever requested an accommodation related to the disability issue. The EEOC guidance further states that must an employer ask whether a reasonable accommodation is needed when an employee has not asked for it. Again, the EEOC is clear to deny that a case law is in force. Generally, no. In a general rule, an individual with a disability must inform the employer that an accommodation is needed. There is only one exception to that rule, which is not asked for. And that is when the employer is aware of the disability and knows or has reasons to know that the disability prevents the employee from asking for an accommodation, that is simply not the case for them here. Indeed, Ms. Smith was aware and, in fact, in October had asked for reasonable accommodation. And, in fact, the school provided those requested accommodations. Indeed, Your Honor, in the other standard action process, her testimony is as follows. Mr. Taylor is the vice principal of the school. Did you ever go to Mr. Taylor and talk to him about any sort of issues with your vision? Answer, yes, I did. What was his accommodation? Answer, it was just about accommodation. What they wanted me to do and things I thought would work for me. Was Mr. Taylor respected? Did you talk to him? Yes. Was there a couple of conversations or just a couple? I believe there was a couple. Did Mr. Taylor have time to talk to you? Yes. Did he push you off? No. Did he listen to what you had to say? Yes. Did he provide feedback? Were you satisfied with his accommodation? Yes. In these circumstances, to say that the employer did not engage in the interactive process as best he could defies reality. Well, let me, if I could, I'll move back. Let me ask about, you know, there are two or three comments here which are pretty, if you will, worrisome. At least I would say if I were in your shoes. The first comment is, why was she terminated? She didn't fit in. Now, the next comment that I would talk about is, a blind teacher cannot teach effectively. Those two comments, by themselves, it seems, and maybe you need to address this pretty carefully, are at least direct evidence that should get to a jury, or they're at least some evidence of pretext that ought to get her to the jury. Happy to address those, Your Honor. First of all, the comment you don't fit in is by definition not direct evidence. The Ninth Circuit has previously defined direct evidence as evidence without inference or presumption that demonstrates discrimination. In this case, the comment you don't fit in is by itself ambiguous. In fact, even plaintiff can see that she did not know what to do in a way none might act upon. So I think, on its face, the comment you don't fit in does not constitute direct evidence. Would it not go to a pretext, though? Your Honor, it may be an issue that should be contemplated as a pretext. Again, in the Ninth Circuit, I would rather put this hard forward because I'm entitled to the same after inference. In that case, in this way, higher for knowing she has a visual impairment and to not redeem her comment, knowing she had a visual impairment. In that case, the Ninth Circuit says there is the same after inference. And like that, there has to be very substantial evidence to create an issue. What inference do I have to make from she didn't fit in? Your Honor, I... I mean, I don't see how one could say she didn't fit in without saying she isn't the same as others who were there. Now... Your Honor, I think that, in this case, the comment you don't fit in has to be evaluated in the context of the fact that throughout her performance, there is no question that she was assertive on all four statements and that is made on all occasions. And repeatedly told that her performance was lacking. Given that that was... I don't know whether she was told her performance is lacking when she gets a 95% rating and gets a bonus at the end for doing a great job. Well, let me address those two things because I think those are a slight distortion of the record. In terms of the bonus, if you look at Ms. Wade's testimony, I think it's page 89 through 94, basically all the kindergarten teachers received the exact same bonus. And because the majority of those bonuses were based on performance standards that were group standards, not individual standards, they were standards that if a kindergarten class achieved certain progress, that was more than half the bonus. Another component of the bonus was whether or not the children's attendance rates were high. Again, that was a selective rate. So the fact that she achieved that kind of bonus, I think is a little misleading in its own way and certainly doesn't create an inference to make. And the second point in terms of her statement, you don't fit in, Your Honor. Again, not the right evidence to make. The question is, she has told her repeatedly. And again, if you look at our answering brief at 6-7, I provide a citation for this. She has received the full criticism of her for accurate observation, for communicated efforts to improve her teaching, and more importantly, for dominant criticism. She received in eight categories a unique improvement rate in March of 07. By definition, that is non-satisfactory performance. Well, you can easily say she had non-satisfactory performance and you would have covered all of that. You don't usually say she didn't fit in. Your Honor, if our teachers are exceptional teachers, the comment, you don't fit in, given her unsatisfactory performance is entirely consistent. This is not a situation where, in fact, our rationale was developed after the fact. These observations were contemporaneous, communicated to her, and she was given the opportunity to create. How were they communicated to her? I'm sorry, Your Honor. I didn't mean to blast. They were communicated to her on a couple of ways. First of all, following the observations, she admits that the vice principal sat down and spoke with her. The formal evaluations, there was actually a separate meeting in which she was spoken to, and she actually, if you look at the evaluations, signed off on the form. Thank you, Your Honors. Thank you. The only thing that distinguishes Rhonda Smith from the other teachers at Norwex for basic school is she's blind. So when she's told she doesn't fit in, that's the only characteristic that distinguishes her from everybody else. The idea that they gave everybody the performance bonus of the same in kindergarten, that's not supported by the record because the two teachers that were let go, when Kelly was asked if they got the maximum performance bonus, she says, I don't know. Not everybody got the same bonus. Those were not kindergarten teachers, but plainly from that testimony, no, it wasn't an across-the-board for every grade level, and the form that they used to calculate that is an individual performance. It's your performance, your attendance, and your professionalism. The case law that supports there has to be an ongoing interactive process is in the brief at Stonefield University Memorial Hospital, and they almost got it right in October. That was the interactive process. They evaluated her. They went back to her and said, what do you need to improve in these areas? They never did it again. In March of 2007, they never went back to her and said, these are the problems you're having, and they knew it was disability-related because there's two memos they have. All right. Thank you. Thank you. The court appreciates the argument of counsel. The case just argued is submitted for decision.
judges: Moody, Schroeder, Smith N. R.